Laurence F. Padway, (SBN 89314)
Law Offices of Laurence F. Padway
1516 Oak Street, Suite 109
Alameda, California 94501
Telephone: (510) 814-6100
Facsimile: (510) 814-0650
Email:  lpadway@padway.com

Attorneys for Plaintiff
Marlon Montoya

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARLON MONTOYA, | No. |
| Plaintiff, | COMPLAINT FOR DECLARATORY RELIEF AND ERISA BENEFITS |
| vs. | |
| RELIANCE STANDARD LIFE INSURANCE COMPANY, THE RSL GROUP AND BLANKET TRUST, | |
| Defendants. | |

Comes now plaintiff alleging of defendant as follows:

**Jurisdiction**

1. This suit seeks declaratory relief concerning the appropriate processes for an administrative review and review of a failure to extend benefits under a long term disability plan covered by ERISA, 28 U.S.C. 1132. Federal jurisdiction arises under 28 U.S.C. 1132(f).

**First Claim for Relief - ERISA Benefits**

2. Marlon Montoya is a beneficiary of The RSL Group and Blanket Trust through his employer Westside Community Services which was a participating unit. Both Mr. Montoya and the Plan reside in this judicial district. The plan is covered by the Employee Retirement Income Security Act of 1974.

**Complaint**        1

1         3. Defendant Reliance Standard Life Insurance Company ("Reliance") is a corporation which acts as a fiduciary of the plan, insures the plan, and has taken over as the decision-maker for disability benefits under the plan, and which does business within this judicial district.

4. Mr. Montoya filed a claim for long term disability benefits on April 20, 2013, alleging that he was disabled because of neck pain, lower and mid back pain, digestive, arms and hands pain, shoulder pain and Psych. The claim was denied on June 18, 2013 and the reason given for the denial was that they determined that he retained the ability to perform the material duties of his occupation.

> "Based on all the medical records received, the medical department has indicated that the medical records support your disability for psychiatric impairment from the date of loss of June 26, 2012 until July 31, 2012 due to an acute stress reaction with co morbid occasional, bilateral fingering and handling. However, after July 31, 2012, medical records do not support moderate to severe psychiatric impairment that would preclude work function in another setting such as, a different employer or a different location. Moreover, the physical restrictions would remain.
>
> A Vocational Rehabilitation Specialist evaluated the above-referenced physical restrictions and concluded that your work capacity and restrictions as noted above as of August 1, 2012 would be commensurate with the duties and demands of your regular occupation.
>
> A Vocational Rehabilitation Specialist has reviewed and considered all relevant information in your claim file and determined that your occupation as a Mental Health Therapist is classified as sedentary exertion level. Your claim for benefits has been evaluated based on your ability to perform a sedentary occupation, which requires the ability to lift/carry and push/pull up to a minimum of 10 or less pounds and is performed primarily from a seated position, but may require occasional standing or walking.
>
> Given these facts, we have determined that you do not meet your group policy's definition of Total Disability and your claim must be denied."

Pursuant to 29 C. F. R. 2560.503-1(h)(2)(iii), the adverse benefit determination was required to provide a statement of what Mr. Montoya needed to do in order to perfect his claim. In that respect, the adverse benefit determination, a copy of which is attached as an exhibit to this complaint, states:

**Complaint**                                                       2

You may request a review of this determination by submitting your request in writing to:

Reliance Standard Life Insurance Company
Quality Review Unit
P.O. Box 8330
Philadelphia, PA 19101-8330

This written request for review must be submitted within 180 days of your receipt of this letter or the last date to which we have paid, whichever is later. Your request should state the any reasons why you feel the determination is incorrect, and should include any written comments, records, or other information pertaining to your claim for benefits. Only one review will be allowed.

5. Mr. Montoya filed an appeal of the adverse benefit determination on December 19, 2013. He requested that the plan defer a decision on his appeal pending the completion of an agreed medical examination which was planned to occur in his related workers compensation claim.

6. On January 31, 2014, the plan announced its intention to conduct two in person medical examinations of Mr. Montoya during the appeal. One examination was scheduled with Dr. Anita Roth, who specializes in the filed of Physical Medicine & Rehabilitation and Dr. Mark Perl, a psychiatrist. The plan has offered no explanation for its decision to delay undertaking these evaluations until after it had made its initial denial of benefits.

7. Although counsel for plaintiff objects to these examinations as untimely, he agreed to allow the examinations to proceed provided that he was allowed to attend and observe, and that any paperwork required for the appointment be sent to counsel ahead of the examinations.

8. On February 25, 2014, counsel and Mr. Montoya appeared for the examination scheduled with Dr. Anita Roth. Dr. Roth refused to proceed with counsel present, and her staff stated that they would report that Mr. Montoya, who was physically present with his counsel, had not appeared for the scheduled examination.

**Complaint** 3

9. The plan then advised that it would attempt to locate another physician and reschedule the examination. The plan later advised that it was unable to locate *any* physician who would allow counsel to attend the examination, and rescheduled the examination with Dr. Roth. Counsel for plaintiff responded by suggesting several alternatives, including such things as joint selection of an examining physician, asking the examining physician to formulate standard diagnoses before answering questions about the ability or disability of the plaintiff, requesting the physician to cite medical literature on contested medical issues, etc. With respect to the psychiatric examination desired by Reliance Standard, plaintiff's counsel agreed to allow it to proceed in his absence in exchange for a complete examination protocol listing all tests which the psychiatrist proposed to undertake, a list of cases in which either the physician or the vendor who selected the physician has undertaken for Reliance Standard with some specific information about each case, and how often the psychiatrist disagreed with the treating mental health provider, and information similar to what would be disclosed about an expert witness pursuant to F. R. C. P., Rule 26. Counsel for plaintiff noted that if the number of cases worked on by this psychiatrist or vendor for Reliance Standard were large, that he was willing to discuss ways to minimize the amount of material required.

10. Counsel for plaintiff also pointed out, by way of example, that there are physicians who are widely accepted as neutral evaluators of ability to work, such as Warbritton Associates, which specializes in examinations for workers compensation. That practice has five orthopedic surgeons, two pain management specialists, a physiatrist, three psychiatrists and four psychologists. Finally, counsel for Mr. Montoya assured Reliance Standard that he was willing to engage in a dialogue and was interested in finding a means by which the examinations could be conducted in a manner which both sides would consider fair. A copy of counsel's letter of June 9, 2014, is attached to this complaint.

11. Reliance Standard responded by completely rejecting the suggestions of counsel for plaintiff, and by insisting that the examinations proceed without any of the accommodations requested. A copy of the letter from Reliance Standard on June 9, 2014 is attached to this complaint.

**Complaint** 4

12. The examination of Mr. Montoya by Dr. Roth has, as a result, not been completed.

13. A dispute has arisen between the parties as to whether the conduct of medical examinations during the administrative appeal is appropriate, and as to what safeguards, if any, the plan participant is entitled to have in place to assure (a) the selection of a fair examiner (b) a fair examination and (3) the opportunity to respond effectively to the results of the examination during the administrative process. Deferring the matter until the claim has been denied and a lawsuit commenced is not an adequate remedy because, among other things, ERISA litigation procedures are not designed to allow adequate discovery in the presence of abuse of ERISA procedures, but only permits limited discovery because of the assumption that the plan administrator, acting as a trustee, is using higher than marketplace standards and engaging in a meaningful dialogue during the administrative process, and that the plan participant has an adequate opportunity during that process to respond to any adverse opinions during the administrative process.

14. ERISA's procedural safeguards were enacted to provide a full and fair administrative review to resolve benefit claim disputes. A plan should, in its initial adverse determination, provide all of the reasons for the denial of the claim. If a medical examination of the plan participant is appropriate, it should be done before the initial denial of the claim, so that th eplan participant has an adequate opportunity to address the report of that examination in connection with the administrative appeal. One reason for following the proper procedures during the administrative appeal is to create an impartial administrative record for later administrative or judicial review, see *Gagliano v. Reliance Standard Life Insurance Co.,* 547 F. 3d 230, 235 (4th Cir., 2008), and to enable plan participants to prepare adequately for further administrative review and appeal to the federal courts if necessary. See *Richardson v. Central States, Southeast & Southwest Pension Fund*, 645 F. 2d 600, 665 (8th Cir.,1981). ERISA requires a "meaningful dialogue between the ERISA plan administrators and their beneficiaries." *Booton v. Lockheed Medical Benefit Plan,* 110 Fed. 3d 1461, 1463 (9th Cir., 1997), which does not occur when a plan performs medical examinations during the

**Complaint** 5

1 administrative appeal for the reasons described below.

15. Conducting an in person medical examination on appeal creates new evidence without providing the plan beneficiary the opportunity even to see the evidence, much less to challenge it. There is no provision that requires the plan even to provide the medical report to the plan participant for comment before relying upon it to make an adverse determination. A fair review requires the plan to set forth its reasons for denial in the initial determination, as opposed to creating a moving target by post hoc rationale. *Short v. Central States, Southeast and Southwest Areas Pension Fund,* 729 F. 2d 567, 571 (8th Cir., 1984); *Glista v. Unum Life Ins. Co.,* 378 F. 3d 113, 131–132 (1st Cir., 2004).

16. No one argues that a plan may not conduct an in person medical examination. Indeed, multiple decisions commend their use. *Montour v. Hartford Life and Acc.,* 588 F. 3d 623 (9th Cir., 2009). But when a plan denies a claim for benefits, it closes the claim, it has made its decision, and it cannot reasonably argue that it then requires an in-person medical examination to make a decision. The plan requires adequate information at the time of its initial denial. It is that decision which the plan participant must challenge on appeal. An in-person medical examination during the administrative appeal creates new evidence to which the plan participant is not privy and to which he has no opportunity to respond. Accordingly, a post-denial medical examination invites the plan administrator to "tack on a new reason for denying benefits in a final decision, thereby precluding the plan participant from responding to that rationale for the denial at the administrative level,[and thereby] the administrator violates ERISA's procedures." A*batie v. Alta Health and Life Ins. Co.,* 458 F. 3d 955, 974 (9th Cir., 2005) .

17. Cases in this circuit find in person medical examinations on appeal, which provide no opportunity for comment by the plan participant, violate ERISA. *Cherry v. Digital Equip.Corp. [LTD] Plan* (& Prudential), 2006 U.S. Dist LEXIS 68099, *22-24 (E.D. Cal., 2006) (demand for an in person medical examination three month after claimant's final appeal of the denial

**Complaint** 6

"unreasonable"); *Perez v. Cozen & O'Conner LTD Plan*, 459 F. Supp. 2d 1018 (S.D. Cal., 2006) ( request for in person medical examination made after Plaintiff's final appeal "was not reasonable, and thus Plaintiff did not breach the contract when she refused to attend,"); *Ace v. Aetna Life Ins. Co.*, 139 F.3d 1241 (9th Cir. 1998) (in a case not subject to ERISA, a disability insurer's last minute demand for an in person medical examination was evidence of bad faith); *Kowalski v. Farella, Braun & Martel, LLP*, 2007 U.S. Dist. LEXIS 37317 (N.D. Cal., May 7, 2007) (it is "simply unreasonable" to request examination followinog denial)

18. Other jurisdictions concur. In *Sidou v. UnumProvident Corp*. 245 F. Supp. 2d 207 (D.ME., 2003), the court found, "any relative utility in conducting an examination should have been apparent to [the insurer well before the denial]." In *Kosiba v. Merck*, 384 F.3d 58 (3d Cir., 2005), the court found the payor's post-denial IME demand just a fishing expedition to support a denial, and that such practice "strongly suggests a desire to generate evidence to counter [the claimant's] physician's diagnoses. Id at 61. *Neiheisel v. AK Steel Corp*, 2005 U.S.Dist.LEXIS 4639 (S.D. Ohio 2005) (noted the Secretary's regulations allow for "consultation" with health professional in the relevant field, 29 C.F.R. 2560.503-1(**h**)(iii) and (iv), but *examinations* after termination are unlawful).

19. The insurer's insistence on conducting in person medical examinations during the appeal, and its failure to allow counsel to attend the same, is an arbitrary and capricious action which renders any decision made thereafter.

20. Plaintiff is entitled to a declaration of his rights under ERISA that he need not attend any in-person medical examination during the administrative appeal. He is, under the circumstances, entitled to consider his administrative remedies exhausted.

21. Plaintiff is entitled to an award of benefits due under ERISA, to payment of his attorneys' fees, and prejudgment interest.

**Complaint** 7

Wherefore, plaintiff prays for relief as set forth below:

1. For a declaration that the insurer and the plan are not entitled to conduct in person medical examinations during the administrative appeal;

2. That he has exhausted his administrative remedies;

3. That he is entitled to an award of benefits due, including prejudgment interest and attorneys' fees; and

4. For such other and further relief as the court deems just and proper.

Dated: June 12, 2014        <u>/s/ Laurence F. Padway</u>
                            Laurence F. Padway
                            Attorney for plaintiff

**Complaint** 8

Exhibit 1

**RELIANCE STANDARD**
**LIFE INSURANCE COMPANY**
A MEMBER OF THE TOKIO MARINE GROUP

P.O. Box 8330
Philadelphia, PA 19101-8330
(800) 351-7500
Fax (267) 256-4262

June 18, 2013

Mr. Marlon Montoya
1056 Ashbridge Bay Dr
Pittsburg, CA 94565

Re: Claimant:      Marlon Montoya
    Policy No:     LTD 119614
    Claim No:     2013-04-22-0230-LTD-01
    Policyholder:  Westside Community Services

Dear Mr. Montoya:

We are writing to you regarding your claim for Long Term Disability ("LTD") benefits. We have completed our review of your claim and have unfortunately determined that you are not entitled to disability benefits under policy LTD 119614. Please allow us to offer an explanation as to how we arrived at that decision.

To be eligible for benefits, the group policy requires that medical documentation must substantiate that an employee, while insured under the group policy, meets the group policy's definition of Total Disability. The policy states in relevant part:

*"Totally Disabled" and "Total Disability" mean, that as a result of an Injury or Sickness:*
    *(1) during the Elimination Period and for the first 24 months for which a Monthly Benefit is payable, an Insured cannot perform the material duties of his/her Regular Occupation;*
        *(a) "Partially Disabled" and "Partial Disability" mean that as a result of an Injury or Sickness an Insured is capable of performing the material duties of his/her Regular Occupation on a part-time basis or some of the material duties on a full-time basis. An Insured who is Partially Disabled will be considered Totally Disabled, except during the Elimination Period;*
        *(b) "Residual Disability" means being Partially Disabled during the Elimination Period. Residual Disability will be considered Total Disability; and*
    *(2) after a Monthly Benefit has been paid for 24 months, an Insured cannot perform the material duties of Any Occupation. We consider the Insured Totally Disabled if due to an Injury or Sickness he or she is capable of only performing the material duties on a part-time basis or part of the material duties on a Full-time basis.*

In addition, the Policy also states:

    **PAYMENT OF CLAIMS:** When we receive written proof of Total Disability covered by this Policy, we will pay any benefits due. Benefits that provide for periodic payment will be paid for each period as we become liable.

To determine whether you satisfy the definition of *Total Disability,* we have reviewed all of the information in your claim file, including (but not limited to) the information provided by the Kaiser Medical Group. Based upon our review of this information, we have determined that you retain the ability to perform the material duties of your occupation.

Based on all the medical records received, the medical department has indicated that the medical records support your disability for psychiatric impairment from the date of loss of June 26, 2012 until July 31, 2012 due to an acute stress reaction with co morbid occasional, bilateral fingering and handling. However, after July 31, 2012, medical records do not support moderate to severe psychiatric impairment that would preclude work function in another setting such as, a different employer or a different location. Moreover, the physical restrictions would remain.

A Vocational Rehabilitation Specialist evaluated the above-referenced physical restrictions and concluded that your work capacity and restrictions as noted above as of August 1, 2012 would commensurate with the duties and demands of your regular occupation.

A Vocational Rehabilitation Specialist has reviewed and considered all relevant information in your claim file and determined that your occupation as a Mental Health Therapist is classified as sedentary exertion level. Your claim for benefits has been evaluated based on your ability to perform a sedentary occupation, which requires the ability to lift/carry and push/pull up to a minimum of 10 or less pounds and is performed primarily from a seated position, but may require occasional standing or walking.

Given these facts, we have determined that you do not meet your group policy's definition of *Total Disability* and your claim must be denied. We regret our decision could not be more favorable. Our decision has been based on information contained in your file and the policy provisions applicable to your claim.

You may request a review of this determination by submitting your request in writing to:

Reliance Standard Life Insurance Company
Quality Review Unit
P.O. Box 8330
Philadelphia, PA 19101-8330

This written request for review must be submitted within 180 days of your receipt of this letter or the last date to which we have paid, whichever is later. Your request should state the any reasons why you feel the determination is incorrect, and should include any written comments, records, or other information pertaining to your claim for benefits. Only one review will be allowed.

Under normal circumstances, you will be notified in writing of the final determination within 45 days of the date we receive you request for review. If we determine that special circumstances require an extension of time for processing, you will ordinarily be notified of the decision no later than 90 days from the date we receive your request for review.

We will, upon specific request and free of charge, provide copies of all documents, records, and/or other information relevant to your claim for benefits. We will also, upon specific request and free of charge, provide copies of any internal rule, guideline, protocol or other similar criterion (if any) relied upon in making this determination.

In the event that your claim is subject to the Employee Retirement Income Security Act of 1974 ("the Act"), you have the right to bring a civil action under section 502(a) of the Act following an

adverse benefit determination on review. Your failure to request a review within 180 days of your receipt of this letter may constitute a failure to exhaust the administrative remedies available under the Act, and effect you ability to bring civil action under the Act.

Section 2695.7 (b) (3) of the Regulations of the California Insurance Department requires that our Company advise you that if you wish to take this matter up with the California department of Insurance, you may contact the California Department of Insurance. Their address and toll free number follows:

> California Department of Insurance
> Claims Services Bureau
> 11th Floor, 300 South Spring Street
> Los Angeles, CA 90013

> Toll-free Consumer Hotline in California (800) 927-HELP or (213) 897-8921.

Nothing in this letter should be construed as a waiver of any of Reliance Standard Life Insurance Company's rights and defenses under the above policy, and all these rights and defenses are reserved to the Company, whether or not specifically mentioned herein.

If you have any questions regarding this matter, please feel free to contact us at 1-800-351-7500.

Sincerely,

*Karolina Kabala*

Karolina Kabala
LTD Claims Department

Exhibit 2

Law Offices of

# LAURENCE F. PADWAY

Board Certified in Civil Trial Advocacy, NBTA
Diplomate, National College of Advocacy

Writer's Direct Tel : (510) 814-0680
Facsimile : (510) 814-0650
Office Number : (510) 814-6100

E-mail : Lpadway@padway.com

1516 Oak Street
Suite 109
Alameda, CA 94501

June 9, 2014

Laura Baker
Senior Benefits Analyst          Fax: (267) 256-4262
Reliance Standard
Box 8330
Philadelphia, PA 19101

    Re: Marlon Montoya
    Policy: LTD 119614
    Claim: 2013-04-22-0230-LTD-01

Dear Ms. Baker:

    We received your letter of April 28, 2014, and your setting of a defense psychiatric examination with Dr. Perl, and your rescheduling the defense orthopedic examination with Dr. Roth, over our objection that these physicians will not allow me to attend the examinations.

    Under California law, there is a reasonable basis to permit exclusion of counsel from a defense psychiatric examination. Although not directly applicable to ERISA cases, that would be the rule in regular civil cases. However, there are cases which permit recording of the examinations, and please advise whether or not this will be permitted during the exmaination with Dr. Perl. The rule is generally different, however, in cases involving orthopedic and other physical examinations, and normally counsel are allowed to attend those. Those rules are not directly applicable to ERISA cases, but to cases where the parties are in an adversarial relationsip. In ERISA, of course, you are not acting as an adversary or with merely "marketplace" standards. Instead, you are a trustee, with obligations that are "higher than marketplace," as the United States Supreme Court held in Metropolitan Life Insurance Co. v. Glenn. The Ninth Circuit has experessed its concern over physicians who work time and again for the insurance indusstry to the point that their professional integrity is compromised by their economic interest.

    The basic issue from an ERISA standpoint is fundamental fairness. You have unilaterally controlled selection of the vendor, the physician, the examination protocol, the questions to be asked, and the rules to be followed by the physicians in answering them. Not only do you totally control the process, there are no management statistics or controls in place which either define what constitutes a fair and unbiased physician or examination, nor anything

which monitors the examinations to ensure that they are meeting the criteria which Reliance Standard is obliged to provide. The problem is made worse by the failure of Reliance Standard to ask the doctors for their diagnosis, because without a diagnosis, one cannot determine whether the defense doctors disagree with the treating doctors about the nature of the illness or injury, or whether they are simply opining that it takes a different course. And if the defense doctors fail to cite any published medical literature to support their opinion as to the functional capacity of the plaintiff, then the judge who ultimately decides the case has almost no basis at all to accept the opinions of the defense medical examiners.

In systems which are intended to promote fair medical examinations and fair decision making, there are a number of different approaches. In worker's compensation, the parties agree upon an examiner from a state approved list. In civil litigation, the physician is subject to cross-examination and the examination may be photographed or videeotaped. Many years ago, Kaiser Permanente had a heavily criticized arbitration clause in its contracts. It hired outsider counsel to develop a fair arbitration system in which a list of arbitrators was developed following announced rules, and in any given case, the parties are allowed to provided (if they agree to single arbitrator) a list of at least ten arbitrators to rank according to their preference, they are provided with background information concerning each of them, including the text of every arbitration decision the arbitrator had made in every Kaiser case in which he or she had participated.

With respect to Dr. Perl, the psychiatrist, in lieu of my personal attendance at the examination, I would accept: (1) a complete examination protocol including a list of all tests which the physician proposes to administer; (2) a list of all cases in which Dr. Perl has conducted either an examination or a file review for (a) Reliance Standard or (b) MLS in which disability was assessed and the following information: (i) the name of the patient, which may be replaced with a uniform identification number and a statement that the patient either did or did not subsequently file a lawsuit–if a lawsuit was filed, then the case and caption, including contact information for the patient's attorney; (ii) a statement whether this was a file review or examination; (iii) the cost of the work performed and the amount of time which Dr. Perl spent; (iv) if Dr. Perl either failed to make a diagnosis or made one which was different than the diagnosis (or diagnoses) of the treating mental health care provider, a copy of the reports of both Dr. Perl and the treater (the patient identifying information may be replaced with a unique patient identified) and (v) the purpose of the examination (e.g., continued long term disability benefits, short term benefits (vi) a list of depositions taken of Dr. Perl in the past 10 years with the complete case and caption (vii) a current curriculum vitae for Dr. Perl and (viii) the percentage of Dr. Perl's medical income which comes from (A) MLS (B) other disability medical vendors (e.g., MES, NMR, Reed or RRS) and a list of those vendors for whom he has done work in the past 5 years, (ix) any evaluations or reports done by Reliance Standard which evaluate MLS or any reports by MLS done to evaluate its own work for Reliance Standard, and (x) any materials provided by MLS to Reliance Standard as part of any solicitation of business or contract negotiations between MLS and Reliance Standard, and (y) the policies and procedures which Reliance Standard uses to select and evaluate medical vendors, and those evaluations done

during the past ten years (if sone annually).  I am willing to discuss with you the time period for the materials listed above, and I would anticipate doing this all in a manner in which it does not require excessive work or provide boxes and boxes of material.  For example, if there is a statistical report which shows how many evaluations were done by MLS and by Dr. Perl and the percentage of those in which there was disagreement with the treating physicians and the areas in which the disagreements occurred, and the percentage of the time that Reliance Standard accepted the MLS conclusions as opposed to those of the treating doctors that may suffice.  Similarly, if Reliance Standard or MLS has policies and procedures which provide a reasonable basis from which to conclude that the physician is providing the same opinions that he would provide if this were a patient that he was treating, that would also go a long way towards meeting what we need.

With respect to Dr. Roth, we are open to accepting similar types of information in lieu of my attending the deposition.

I would also like to know how many physicians were contacted by either Reliance Standard or its vendors in its unsuccessful attempt to locate a physician who would allow me to attend the examination.  As I have attended many examinations of my clients, it is rather striking that Reliance was unable to locate one.

I would also suggest that we could resolve the issue by attempting to reach agreement upon a physician.  Warbritton Associates, for example, specializes in examinations to determine functional abilities.  While the company is known for its work in workers compensation, it physicians could certainly provide a qualitative description of any impairment as opposed to putting numbers on it as is usually deone for worker's comp.  The company website shows five orthopedic surgeons, two pain management specialists, a physiatrist, three psychiatrists and four psychologists.  The website is http://www.warbrittonassociates.com.  If their fees are outside of your budget, we would be willing to discuss participating in covering the costs, and I could discuss with my client an agreement to make the report of their physicians binding on all parties should you want to do that.

It is not my purpose to limit the available solutions to the current problem, and I am willing to discuss other options. But the day of successfully using biased doctors has passed.  And if you insist on an unfair procedure, all that happens is that your denial is followed by a lawsuit in which your procedures are exposed for what they are, and, in this circuit, a prevalng plan participant is, absent special circumstances, awarded attorneys.  I would much rather have a fair claim decision than a lawsuit, but at this point it is in your hands.

I have asked asked my client to attend the examination with Dr. Perl, and I have asked MLS to reschedule the appointment with Dr. Roth so that you may give some consideration to whether or not you want to resolve our objections now, or whether you wish to do so in the lawsuit to follow.

Laura B. Parker
Reliance Standard
June 9, 2014
Page 4

       Finally I should point out that there is good case law in this circuit that medical examinations conducted during administrative appeals are not appropriate, as they should have been done prior to the initial decision. Accordingly, by attending the Perl defense medical examination, we do not agree that the examination is timely, or appropriate, or that it may be used in connection with your decision. An agreed upon examination, however, would waive these issues.

       If Reliance Standard is adamant that it will only accept Dr. Perl and Dr. Roth on the conditions that have been demanded heretofore, we will proceed on that basis, and leave it to the judge to determine the fairness or lack thereof. We are planning to proceed with Dr. Perl on Thursday as scheduled but our objections remain. I have asked MLS to reschedule Dr. Roth to allow time to work out the issues outlined above. If you insist on proceeding with Dr. Roth tomorrow without accommodating any of our requests, please let me know promptly, and I will discuss it with my client and we may be able to attend without rescheduling.

       We trust, however, that you prefer to have some semblance of fairness in your claims processing and will make some adjustments to accommodate our recommendations. Finally, whether or not you accept any of our recommendations, we do request the opportunity to review the defense medical records and have the treating physicians comment upon them before a final decision is made on the claim.

       If you are insistent on proceeding with the Roth examination as scheduled for tomorrow, without any change, please let me know as soon as possible so that I may contact Mr. Montoya. Also, if either Dr. Roth or Dr. Perl desires any paperowrk to be completed before the examination starts, please have that sent to me today by fax or email.

       If you wish to discuss the matter, I will be in the office all day. I do have a phone conference at noon which should last about 20 minutes.

       Very truly Yours,


       Laurence F. Padway

Exhibit 3

**RELIANCE STANDARD**
LIFE INSURANCE COMPANY
A MEMBER OF THE TOKIO MARINE GROUP

P.O. Box 8330
Philadelphia, PA 19101-8330
(800) 351-7500
Fax (267) 256-4262

June 9, 2014

Laurence F Padway
1516 Oak Street
Suite 109
Alameda CA  94501


Re: Claimant:     Marlon Montoya
    Policy No:    LTD 119614
    Claim No:     2013-04-22-0230-LTD-01
    Policyholder: Westside Community Services


Dear Mr. Padway:


This letter serves as an update regarding the review of your client's claim for Long Term Disability benefits.

We received your fax dated June 9, 2014 requesting additional documentation prior to the independent medical examinations scheduled for June 10, 2014 and June 13, 2014.  Our file indicates that letters were sent to you dated May 9, 2014 and May 29, 2014 advising you of the dates of the examinations.

As previously indicated, we are exercising our right to have your client independently examined. Your client's policy states the following policy language, in part:

**PHYSICAL EXAMINATION AND AUTOPSY:** We will, at our expense, have the right to have a Claimant interviewed and/or examined:
   (1) physically;
   (2) psychologically; and/or
   (3) psychiatrically;
to determine the existence of any Total Disability which is the basis for a claim.  This right may be used as often as it is reasonably required while a claim is pending.

We can have an autopsy made unless prohibited by law.


As such, we assert our contractual right to an examination and anticipate Mr. Montoya's attendance regardless of your stated preference to be present at the examinations and your requests for additional documentation on the day prior to the scheduled examination.  Failure to attend the examinations will be construed as refusal to cooperate under the terms of the policy.

As you are aware, we felt it necessary to obtain additional clarifying documentation in the form of medical support. With this in mind, we asserted our contractual right to have your client attend independent medical examinations. Two independent medical examinations were originally scheduled for February 13, 2014 and February 25, 2014. You requested that the examination scheduled for February 13, 2014 be rescheduled. This request was accommodated and rescheduled for March 6, 2014.

On February 25, 2014, you arrived at the scheduled examination with your client. The doctor did not wish to perform the examination with you present and the examination was cancelled.

As you indicated that you wished to be present for the March 6, 2014 examination, we contacted the independent reviewer's office to attend to accommodate your request; however, the physician indicated that he would not perform the examination with you present.

As such, both examinations were cancelled and we referred to our vendor to schedule two examinations with physicians who would be willing to comply with your request to be present at the examinations.

As previously indicated, we are currently unaware of any legal authority requiring the presence of an attorney during an Independent Examination. If you are aware of such a mandate, please provide a copy for our review and consideration. Despite this, we have gone to extraordinary measures to accommodate your request. Unfortunately our efforts have been unsuccessful.

As outlined in our letter to you dated April 28, 2014, we would be proceeding with scheduling two examinations and anticipated that Mr. Montoya would attend regardless of the inability to have you present in the examination room. Our records indicate that you were notified on May 9, 2014 and May 29, 2014 of the examinations to take place on June 10, 2014 and June 13, 2014.

As noted above, we received a fax from your office today indicating that you intend to reschedule the appointment for tomorrow. We anticipate your client's attendance at tomorrow's examination regardless of our ability to consider and/or accommodate your demands as outlined in your June 9, 2014 fax.


Sincerely,


Laura B Parker
Senior Benefits Analyst
Quality Review Unit