UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARLON MONTOYA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>RELIANCE STANDARD LIFE INSURANCE COMPANY, et al.,<br><br>　　　　Defendants. | Case No. 14-cv-02740-WHO<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 24 |

## INTRODUCTION

Defendant Reliance Standard Life Insurance Company ("Reliance") denied plaintiff Marlon Montoya's claim for long term disability benefits under a plan covered by the Employee Retirement Income Security Act of 1974 ("ERISA"). The question I must answer on defendants' motion for partial summary judgment is whether Montoya properly exhausted his administrative remedies before bringing this civil suit under section 502 of ERISA. Because the plan at issue does not require exhaustion, I DENY defendants' motion. However, I also find that it was appropriate for Reliance to require that plaintiff attend to two independent medical examinations, while his claim was at the administrative appeal stage. Therefore, at the conclusion of the oral argument on February 4, 2015, I directed the parties to proceed with scheduling plaintiff for a physical IME.

## BACKGROUND

The following facts are undisputed. Through his employer, Montoya is a beneficiary of a long term disability insurance plan held by defendant The RSL Group and Blanket Trust ("RSL"). Plaintiff's Complaint ("Compl.") (Dkt. No. 1) ¶¶ 1–2; Defendants' Answer ("Ans.") ¶ 2; Administrative Record ("AR") 1. The parties agree that the plan is covered by ERISA. Compl.

¶ 2; Ans. ¶ 2. Defendant Reliance acts as a fiduciary of the plan, insures the plan, and determines disability benefits under the plan. Compl. ¶ 3; Ans. ¶ 3.

On April 20, 2013, Montoya filed a claim for long term disability benefits. AR 195–207. Reliance denied the claim on June 18, 2013. AR 168–71. The denial letter stated in part:

> You may request a review of this determination by submitting your request in writing . . . . [¶] This written request for review must be submitted within 180 days of your receipt of this letter or the last date to which we have paid, whichever is later . . . . Only one review will be allowed. [¶¶] In the event that your claim is subject to the Employee Retirement Income Security Act of 1974 ("the Act"), you have the right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review. Your failure to request a review within 180 days of your receipt of this letter may constitute a failure to exhaust the administrative remedies available under the Act, and effect [sic] you[r] ability to bring civil action under the Act.

AR 169–70.

Montoya appealed Reliance's decision on December 19, 2013. AR 656–58. As part of its review of the appeal, Reliance arranged for Montoya to undergo two independent medical examinations ("IMEs"), one psychological and one physical. AR 1282–84. However, the physicians would not consent to Montoya's counsel attending the examinations. AR 180–81. Unable to find physicians who would agree to that condition, Reliance rescheduled the two IMEs for June 10 (the physical exam) and June 13, 2014 (the psychological exam). AR 184, 1403–04.

Montoya did not appear for the June 10 physical IME, but he appeared for the psychological IME on June 13. AR 1455; 1458–75. That same day, he filed this lawsuit seeking declaratory relief and alleging that Reliance's request for IMEs during the administrative appeal was an abuse of ERISA's procedural safeguards.[1] Compl. ¶¶ 13–15. A few days later on June 16, 2014, Reliance upheld its initial denial of Montoya's claim, citing his failure to submit to the physical IME as a reason for denial. AR 188–94. This denial letter advised Montoya that he was "entitled to an additional appeal review," but only specifically on the issue of his failure to

---

[1] Montoya filed an amended complaint on September 15, 2014, but voluntarily withdrew that amended complaint on September 19, 2014. Dkt. 19, 20. Pursuant to this Court's order, Montoya re-filed a first amended complaint ("FAC") on February 9, 2015. Dkt. 32.

2

cooperate with Reliance's "right to a physical examination." AR 193. On July 23, 2014, Reliance denied Montoya's claim as to the psychological component of his asserted disability based on the results of the psychological IME. AR 1452–57.

Reliance moves for summary judgment on the ground that Montoya failed to exhaust his administrative remedies prior to bringing suit under section 502 of ERISA. Defendants' Motion for Summary Judgment ("Mot.") (Dkt. No. 24) 1–2. Its argument hinges on a provision in the insurance policy which states that Reliance "ha[s] the right to have a Claimant interviewed and/or examined . . . to determine the existence of any Total Disability which is the basis for a claim." Mot. 1–2; AR 14. It argues that Montoya's refusal to submit to the physical IME constituted a failure to cooperate with the claims process, and that without completion of the IMEs, the appeal process was still pending, rendering Montoya's lawsuit premature. Mot. 1, 6–8.

Montoya responds that Reliance has not provided any documents that actually describe an appeal process to which claimants must reasonably adhere. Plaintiff's Opposition ("Oppo.") (Dkt. No. 27) 1–3. Montoya also contends that Reliance acted unreasonably by delaying the IMEs until after Reliance had initially denied Montoya's claim, and as a result, he should be considered to have exhausted his claims. Oppo. 11–13.

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the court "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met its burden, the burden shifts to the non-moving party to "designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (quotation marks omitted). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec.*

*Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id.*

## DISCUSSION

Defendants' main argument in support of summary judgment is that IMEs can be required during an administrative appeal of a benefits denial and that failure to comply with an IME demand means that a claimant has failed to exhaust his remedies, and therefore, dismissal of claimant's ERISA lawsuit is appropriate. Plaintiff essentially ignores that argument and instead argues that because defendants failed to comply with various ERISA procedural requirements, exhaustion should be found or excused. For the reasons discussed below, I find that exhaustion should be excused because the plan at issue — as presented to me — does not require exhaustion of administrative remedies prior to filing suit.

### I. EXHAUSTION UNDER ERISA GENERALLY

ERISA does not require a participant or beneficiary to exhaust administrative remedies in order to bring an action under section 502. However, federal courts, including the Ninth Circuit, are in agreement that a claimant must first "avail himself or herself of a plan's own internal review procedures before bringing suit in federal court." *Diaz v. United Agric. Emp. Welfare Benefit Plan & Trust*, 50 F.3d 1478, 1483 (9th Cir. 1995); *see also Barboza v. California Ass'n of Prof'l Firefighters*, 651 F.3d 1073, 1076 (9th Cir. 2011); *Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 626 (9th Cir. 2008); *Amato v. Bernard*, 618 F.2d 559, 568 (9th Cir. 1980).

Where a plan fails to establish or follow claims procedures required by ERISA, "a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall

4

be entitled to pursue any available remedies under section 502(a) . . . on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim." 29 C.F.R. § 2560.503–1(*l*).Additionally, where a plan is either ambiguous on the need to exhaust administrative remedies or reasonably read to allow a claimant to file a lawsuit without exhausting administrative remedies, exhaustion is not required. *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc*., 770 F.3d 1282, 1299 (9th Cir. 2014) (recognizing that "[e]xempting from the general exhaustion requirement those plan participants who reasonably interpret their ERISA plan not to impose an exhaustion requirement will have the salutary effect of encouraging employers and plan administrators to clarify their plan terms and, thereby, of leading more employees to pursue their benefits claims through their plan's claims procedure in the first instance." (citations and internal quotation marks omitted)).

The threshold inquiry, therefore, is whether the plan required exhaustion of administrative remedies.

## II. THE PLAN DOES NOT REQUIRE EXHAUSTION OF ADMINISTRATIVE REMEDIES

### A. The insurance policy is a plan document for ERISA purposes.

The parties disagree whether the RSL insurance policy is a plan document for ERISA purposes. Montoya argues that Reliance has failed to turn over the actual plan documents and there is no evidence to show that the insurance policy is the plan document in this situation. Oppo. 4–5. Reliance argues that the policy sufficiently establishes the terms of the plan and can be construed as a plan document. Reply 2–3.

An ERISA plan can be established "rather easily" by no more than "arrang[ing] for a group-type insurance program." *Credit Managers Ass'n of S. Cal. v. Kennesaw Life and Acc. Ins. Co.*, 809 F.2d 617, 625 (9th Cir. 1987) (quotation marks omitted). ERISA requires that "[e]very employee benefit plan . . . be established and maintained pursuant to a written instrument" (29 U.S.C. § 1102(a)(1)), and a program under which an employer provides medical insurance benefits constitutes such a plan (*see* 29 U.S.C. §§ 1002(1)(A) and (3)). Here, Reliance argues that the insurance policy is the "written instrument." *See Cinelli v. Sec. Pac. Corp.*, 61 F.3d 1437,

1441 (9th Cir. 1995) ("[I]t is clear that an insurance policy may constitute the 'written instrument' of an ERISA plan [citation omitted]."). For purposes of determining this motion, I accept Reliance's argument and find that the insurance policy produced in the Administrative Record is the written plan document.

### B. The insurance policy does not require exhaustion of administrative remedies prior to bringing legal action.

Contrary to Reliance's contentions, the Ninth Circuit has made it clear that under ERISA, "internal review procedures *must* be included in the plan's written documents, which include the plan instrument, *see* 29 U.S.C. § 1102(a)(1), and a summary of the plan instrument, called the 'summary plan description.' 29 U.S.C. § 1022." *Vaught*, 546 F.3d at 627 (emphasis added). As Reliance contends that the only document that is the written plan document in this case is the insurance policy, the insurance policy controls on the question of exhaustion.

On its face, the insurance policy does not require exhaustion of remedies as a condition precedent to filing suit and, instead, implies that exhaustion is *not* required. In a section labeled "CLAIMS PROVISIONS," the policy details rules concerning notice of a claim, claim form, written proof of total disability, payment of claims, arbitration of claims, physical examinations and autopsies, and legal action. AR 14–15. The only requirement for exhaustion of remedies is found within the rule for arbitration of claims. AR 14 ("In the case of a claim under [ERISA], the Insured's ERISA claim appeal remedies, if applicable, must be exhausted before the claim may be submitted to arbitration.").

However, in the "LEGAL ACTIONS" section, the policy provides that:

> No legal action may be brought against us to recover on this Policy within sixty (60) days after *written proof of loss has been given* as required by this Policy. No action may be brought after three (3) years . . . from the time *written proof of loss is received*.

AR 15 (emphasis added).

There is nothing else in the policy that discusses administrative remedies and nothing that requires exhaustion of those remedies. Instead, the policy implies that the only requirement a claimant must meet before filing suit is to wait at least 60 days after submitting written proof of

6

loss but no longer than three years. As the policy language does not require exhaustion and in fact suggests that exhaustion is not required, plaintiff need not have exhausted any administrative remedies. *See Spinedex*, 770 F.3d at 1298; *see also Nelson v. EG & G Energy Measurements Grp., Inc.*, 37 F.3d 1384, 1388 (9th Cir. 1994).

### C. The denial of benefits letters cannot impose an exhaustion requirement.

Reliance argues that Montoya was clearly given notice of his appeal rights in the June 18, 2013 letter, and that Montoya in fact undertook the administrative remedies offered by Reliance. Reply 4. The letter stated in part:

> You may request a review of this determination by submitting your request in writing . . . . [¶¶] [Y]ou have the right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review. Your failure to request a review within 180 days of your receipt of this letter may constitute a failure to exhaust the administrative remedies available under the Act, and effect [sic] you[r] ability to bring civil action under the Act.

AR 169–70. This same boilerplate language was used in the June 16, 2014 letter. AR 193.

However, these denial letters cannot be used to impose an exhaustion requirement where the plan itself does not expressly require or otherwise incorporate one. In general, benefits determination notices are themselves not plan documents. Explicit incorporation based on general rules of contract interpretation is the only way the Ninth Circuit has accepted an extraneous description of claims procedures to be incorporated into an ERISA plan document. *See Vaught*, 546 F.3d at 622, 627 (plan's summary plan description stated that a description of the plan's appeal procedures would be included in the Explanation of Benefits (EOB) and the details of a plan's internal review procedures were in fact set forth in an EOB sent to the claimant).

That is not the situation here. The insurance policy makes no mention of benefit determination letters or notices, nor does it advise that appeals procedures are detailed in a separate document. Rather, the only extraneous documents the policy mentions are the insurance application and any attached amendments to the policy. AR 13 ("The entire contact between you and us is this Policy, your application (a copy of which is attached at issue) and any attached amendments.") There do not appear to be any attached amendments. Because the policy does not

7

expressly incorporate claims procedures detailed in the explanation of benefits letters, Reliance cannot rely on them to establish that plaintiff was required either to participate in the appeal procedures or to exhaust those administrative remedies prior to filing suit.

Even if the denial letters are construed as plan documents, they can still be "fairly read as suggesting that exhaustion is not a mandatory prerequisite to bringing suit" in combination with the language of the insurance policy. *Spinedex*, 770 F.3d at 1298. The language in the denial letters is, at best, ambiguous as to exhaustion. The letters only permit, but do not require, an administrative appeal: "[Claimant] *may* request a review of this determination . . . ." AR 169, 193 (emphasis added). The denial letters then go on to state that a "failure to request [an adverse benefit determination review] . . . *may* constitute a failure to exhaust the administrative remedies" and affect the ability to bring legal action. AR 170, 194 (emphasis added). This permissive language does not inform an ordinary plan participant that he must exhaust the available administrative remedies prior to filing suit.

**D. The administrative remedies are deemed exhausted.**

Where a plan fails to establish or follow claims procedures required by ERISA, "a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) . . . ." 29 C.F.R. § 2560.503–1(*l*). In the absence of an established procedure in the written plan document for review of an adverse determination of benefits, and without any written requirement in the plan compelling exhaustion (rather, the language indicates that exhaustion is *not* required), Montoya is not required to have exhausted Reliance's administrative remedies.[2]

**III. IT WAS APPROPRIATE FOR RELIANCE TO REQIRE PLAINTIFF TO ATTEND INDEPENDENT MEDICAL EXAMINATIONS DURING HIS ADMINISTRATIVE APPEAL**

Finally, the parties dispute whether it was appropriate for Reliance to require plaintiff to attend IMEs during the administrative appeal stage. I find that it was.

---

[2] Plaintiff raises a number of issues in his Opposition, including alleged deficiencies in Reliance's denial letter and arguments that Reliance improperly ignored the requirements of Montoya's job as well as symptoms Montoya claimed contributed to his disability. Oppo. 3–6. Those are merit-based arguments that may be raised on a subsequent motion.

After initially denying Montoya's claim and during the administrative appeal, Reliance invoked its right to request an IME based on the "PHYSICAL EXAMINATION AND AUTOPSY" section in the policy, which states:

> [Reliance] will, at [its] expense, have the right to have a Claimant interviewed and/or examined:
> (1) physically;
> (2) psychologically; and/or
> (3) psychiatrically;
> to determine the existence of any Total Disability which is the basis for a claim. This right may be used as often as it is reasonably required while a claim is pending.

AR 14.

The Ninth Circuit has not yet addressed whether it is procedurally or substantively unfair to require IMEs during the administrative appeal stage. However, I am persuaded by the out-of-circuit cases cited by Reliance that have directly addressed this issue in favor of requiring an IME during administrative appeal.

In *Hall v. United of Omaha Life Ins. Co.*, the plan requested the claimant to undergo an IME during the appeal stage. 741 F. Supp. 2d 1348, 1352 (N.D. Ga. 2010). Like Reliance, the plan in *Hall* invoked its right to obtain an IME from the language in the policy. *Id.* The court found the request for an IME appropriate for several reasons. First, there was no established limit in the plan as to when in the claims determination process the plan could require a claimant to attend an IME. *Id.* at 1354; *see also Bruce v. Hardford*, No. 1:14CV18 JCC/TRJ, 2014 WL 3443823, at *6 (E.D. Va. July 10, 2014) (holding that plan language stating the plan has the right to require examination by a physician of its choice was unambiguous and provided clear authority for the plan to request a functional capacity evaluation during the appeal stage).[3] Second, because the appeal was handled by a separate, independent reviewer, an IME was reasonably necessary to provide more medical information about the claimant. *Id.* Third, the request for an IME was

---

[3] *Compare with Neiheisel v. AK Steel Corp.*, No. 103 CV 868, 2005 WL 1077593, at *3, 9 (S.D. Ohio Feb. 17, 2005), where the policy language allowing the plan to "consult with [a] health care professional who has appropriate training and experience in the field of medicine" did *not* clearly provide for a right to an IME.

9

made in good faith. The court found that the IME was "a legitimate part of [the plan's] investigation of [the] claim" and not an attempt to stall a decision on the claim: after a physician recommended the IME, the plan immediately scheduled one and notified the claimant. *Id.* Fourth, the request for an IME was reasonable in light of applicable ERISA regulations, which provide that when "'deciding an appeal of any adverse benefit determination that is based in whole or in part on a medical judgment . . . [the plan may] consult with a health care professional who has appropriate training and experience.' 29 C.F.R. § 2560.503–1(h)(3)(iii)." *Id.* Finally, allowing an IME during the appeal process was appropriate and consistent with the purpose of the ERISA exhaustion requirement because it "could result in a decision in favor of the claimant and eliminate the need for a federal lawsuit." *Id.* at 1355.

In *Hart v. Reliance Standard Life Ins. Co.*, the policy also contained language similar to Reliance's policy, allowing the plan to have a claimant physically examined, at its own expense, to determine the existence of a disability as the basis for the claim. No. 12-CV-02434-MSK-MEH, 2013 WL 4781623, at *4 (D. Colo. Sept. 6, 2013). The policy further stated that "the right may be exercised 'as often as it is reasonably required while a claim is pending.'" *Id.* The court held that the term "while a claim is pending" applied to the appeals stage, because it was "entirely possible that, upon review, the plan administrator could reverse the denial of benefits." *Id.* As a result, it was reasonable for the plan to order an IME while it was reviewing the claim on appeal. *Id.*; *see also Acierno v. First Unum Life Ins. Co.*, No. 98 CV 3885 SJ, 2002 WL 1208616 (E.D.N.Y. Mar. 31, 2002) (holding that a plan's request for an IME during appeals stage was reasonable, noting there are many circumstances where an insurance company may reasonably need additional physical examinations).[4]

Those cases are analogous to the situation here. In contrast, Montoya relies on several cases that are not.[5] This is not a bad faith insurance case, like *Ace v. Aetna Life Ins. Co.*, where

---

[4] *See also Hunter v. Metro. Life Ins. Co.*, 251 F. Supp. 2d 107 (D.D.C. 2003) and *Zalka v. Unum Life Ins. Co. of Am.*, 65 F. Supp. 2d 1369 (S.D. Fla. 1998) (in both cases, the courts did not address whether an IME request during administrative appeal was appropriate — rather, the courts assumed they were, and went on to conclude that claimants had failed to exhaust administrative remedies).

[5] Montoya's reliance on *Perez v. Cozen & O'Conner Group Long Term Disability Coverage*, 459

10

1   the Ninth Circuit found that the defendant insurer's request for an IME "[at] the last minute" after

2   twice denying plaintiff's claim was sufficient evidence not only of the insurer's bad faith but also

3   reckless indifference to support an award of punitive damages.  139 F.3d 1241, 1246–47 (9th Cir.

4   1998).  Here, Montoya cites no facts other than the request for IMEs on administrative appeal to

5   attempt to show that Reliance was acting in bad faith (much less with reckless disregard to the

6   insured's rights), as the defendant insurer was in *Ace*.

7   Nor is this a case where there has been an unreasonable delay in requesting IMEs, as in

8   *Cherry v. Digital Equip. Corp.*, No. CIVS05-2165 WBS JFM, 2006 WL 2594465 (E.D. Cal. Sept.

9   11, 2006).  There, the court held that the plan's request for an IME at the appeals stage was

10  unreasonable where the plan delayed the request until late into the already-extended time period to

11  complete its review of the appeal, a practice that could be interpreted as "stalling."  *Id.* at *7–8

12  (internal quotation marks omitted) (also citing favorably *Gilbertson v. Allied Signal, Inc.*, 328 F.3d

13  625, 636 (10th Cir. 2003) which noted that the costs from insurers' delays are generally much

14  higher for claimants — who need the benefits — than for plan administrators).

15  Montoya also relies on *Kowalski v. Farella, Braun & Martel, LLP*, No. C-06-3341 MMC,

16  2007 WL 1342475 (N.D. Cal. May 7, 2007), for the proposition that "it is 'simply unreasonable'

17  to request [an IME] following denial.'"  Oppo. 1, fn. 1; FAC 8.  That is an incorrect and

18  incomplete statement from the court's order in that case.  In *Kowalski*, the court followed the

19  holding in *Sidou v. Unumprovident Corp.* 245 F. Supp. 2d 207, 216 (D. Me. 2003) that "it is

20  simply unreasonable to request that a claimant submit to medical examinations *after the

21  applicable deadline for ruling on her appeal*."  *Kowalski*, 2007 WL 1342475, at *4 (emphasis

22  added); *see also Sidou*, 245 F. Supp. at 216 ("it is clear in this case that the only purpose of the

23  requested examinations was to develop a factual record for purposes of determining an appeal

24  *after the applicable deadline for reviewing the appeal had expired*." (emphasis added)).  Again, a

25  request for an IME past the deadline for ruling on the appeal is not at issue in this case.

26  ─────────────────────────────────────────────

27  F. Supp. 2d 1018 (S.D. Cal. 2006) is misplaced.  That case did not directly address whether an
    IME at the appeals stage was reasonable or appropriate.  Instead, the court in *Perez* concluded that
28  the appeals process established by the plan at issue did not discuss and did not require plaintiff to
    submit to an IME to exhaust her administrative remedies.

Finally, *Kosiba v. Merck* involved a situation where the *plan* administrator (rather than the claims administrator) intervened in the appeals process and requested the claimant to undergo an IME on appeal in an apparent effort to counter the consistent evidence from plaintiff's physicians as to her disability.  384 F.3d 58, 61, 67–68 (3d Cir. 2005).  The issue under consideration in *Kosiba* was not whether an IME during an administrative appeal was appropriate, but what standard of review was appropriate for the District Court to apply in reviewing the denial of benefits.  *Id.*[6]  Although the court found that the circumstantial evidence suggested that the plan administrator had a desire to use the IME to generate evidence to counter the claimant's physicians' diagnoses, it also emphasized that "[i]ndependent medical examinations are not uncommon in the claims administration world, and this is responsible plan administration [the court] would not wish to deter."  *Id.* at 68.

In sum, Montoya's cases are inapposite while Reliance's cases speak directly to the question at hand and support my conclusion that absent bad faith or other extenuating circumstances, a plan administrator's request for an IME during the administrative appeal stage does not violate ERISA.  Because there is no argument that Reliance's request for an IME was made in bad faith or unreasonably delayed, I conclude that plaintiff is required to submit to a physical IME in order to complete the record in this case.  As I indicated at oral argument, the parties are to proceed with the IME, and the IME shall be conducted as soon as practicable.  Given Montoya's request, every reasonable effort should be made to find a physician who will agree to conduct the IME with Montoya's counsel present.  If the parties have been unable to find a physician who will agree to this condition, the parties shall submit a joint letter describing their efforts on this matter within seven days of the date of this Order.

## CONCLUSION

For the reasons described above, defendants' motion for partial summary judgment on the issue of exhaustion of remedies is DENIED.  The parties shall proceed with the physical IME and

---

[6] Because the court found that the defendant was not acting as a disinterested fiduciary, the court applied the more searching "heightened arbitrary and capricious standard of review" to its review of the claims denial.  *Kosiba*, 384 F.3d at 68.

that IME shall be conducted within 60 days of the date of this Order.

Additionally, in supplemental briefing submitted after the oral argument, the parties raised the new issue of whether Montoya is entitled under ERISA to review the findings of an IME before a final decision on administrative appeal is rendered by Reliance. That issue will be addressed in a separate order.

**IT IS SO ORDERED**.

Dated: March 2, 2015



WILLIAM H. ORRICK
United States District Judge