UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARLON MONTOYA,<br><br>    Plaintiff,<br><br>    v.<br><br>RELIANCE STANDARD LIFE INSURANCE COMPANY, et al.,<br><br>    Defendants. | Case No. 14-cv-02740-WHO<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 31 |

## INTRODUCTION

Defendant Reliance Standard Life Insurance Company ("Reliance") denied plaintiff Marlon Montoya's claim for long term disability benefits under a plan covered by the Employee Retirement Income Security Act of 1974 ("ERISA"). At oral argument on defendants' motion for partial summary judgment on the question of exhaustion of administrative remedies, I granted leave for the parties to brief the issue of whether ERISA's procedural safeguards require that Reliance allow Montoya to review and respond to the independent medical examination (IME) reports before Reliance reaches a final decision on plaintiff's administrative appeal. Having considered the briefs submitted, I find that on the record before me Montoya has not shown that he is entitled to review the IME reports prior to Reliance issuing a final decision on Montoya's appeal.

## BACKGROUND

Montoya is a beneficiary of an ERISA-covered long term disability insurance plan, for which Reliance is the plan fiduciary and claims administrator. *See* Order Denying Motion for Summary Judgment (Dkt. No. 35), 1–2. On April 20, 2013, Montoya filed a claim for benefits, which was denied on June 18, 2013. *Id.* at 2. On December 19, 2013, Montoya appealed the

denial. *Id.* As part of its review of the appeal, Reliance arranged for Montoya to undergo two independent medical examinations ("IMEs"), one psychological and one physical. *Id.* Montoya appeared for the psychological IME, refused to attend the rescheduled physical IME because counsel was not allowed to be present, and simultaneously filed suit seeking declaratory relief as to his rights under ERISA. *Id.* Shortly after this lawsuit was filed, Reliance upheld its initial denial of Montoya's claim based on physical disability, citing his failure to cooperate with Reliance's physical IME request as a reason for the denial. *Id.* at 2–3. Later, Reliance upheld its denial of Montoya's claim based on psychological disability, relying on the results of the psychological IME. *Id.* at 3.

At the February 4, 2015, oral argument on defendants' motion for summary judgment on exhaustion of administrative remedies, the parties raised the additional issue of whether Reliance is required under ERISA to provide Montoya with a copy of the IME reports before it reaches a final decision on his appeal. Montoya contends that as a plan participant, he is entitled under ERISA to the opportunity to view and respond to the IME results. Plaintiff's First Amended Complaint ("FAC") (Dkt. No. 32) ¶¶ 14, 24.[1] I granted leave for the parties to brief this issue and I treat that briefing as a motion for partial summary judgment.

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of

---

[1] In his FAC, Montoya seeks a declaration that he is not required "to attend an in-person medical examination during the administrative appeal, that he is entitled to have counsel present at any such examination, and that he is entitled to have the plan wait for an Agreed Medical Examination from a related workers compensation case before it makes any decision." FAC ¶ 21. Montoya also seeks a declaration that assuming Reliance is allowed to request IMEs during the administrative appeal, "plaintiff is entitled to a reasonable opportunity to review the reports and related records for the medical examinations and to respond concerning them before the plan is permitted to deny his appeal." *Id.* ¶ 24. In my prior Order (Dkt. No. 35), I found that Reliance was allowed — on the record of this case — to require Montoya to attend the physical and psychological IMEs during his administrative appeal. I also directed counsel to find a physician who would agree to conduct the physical IME with Montoya's counsel present. Dkt. No. 35 at 12. The issue now is whether Montoya is entitled on the facts of this case to review the results of the IME prior to Reliance reaching a determination on his administrative appeal.

2

1  material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however,
2  has no burden to disprove matters on which the non-moving party will have the burden of proof at
3  trial. The moving party need only demonstrate to the court "that there is an absence of evidence to
4  support the nonmoving party's case." *Id.* at 325.

5  Once the moving party has met its burden, the burden shifts to the non-moving party to
6  "designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324
7  (quotation marks omitted). To carry this burden, the non-moving party must "do more than
8  simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec.*
9  *Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a
10 scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could
11 reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252
12 (1986).

13 In deciding a summary judgment motion, the court must view the evidence in the light
14 most favorable to the non-moving party and draw all justifiable inferences in its favor. *Anderson*,
15 477 U.S. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of
16 legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion
17 for summary judgment." *Id.*

**DISCUSSION**

19 Montoya argues that he is entitled to review and respond to the IME reports prior to a final
20 determination on administrative appeal because ERISA regulations require a claimant to be
21 provided with an opportunity for a "full and fair review" of the claim during the appeal.

**I.   "FULL AND FAIR REVIEW" UNDER ERISA**

23 ERISA requires a plan administrator to provide a full and fair review of the plan
24 participant's claim. 29 U.S.C. § 1133(2). The claims procedures of a plan "will not be deemed to
25 provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse
26 benefit determination unless the claims procedures [¶] [p]rovide that a claimant shall be provided,
27 upon request and free of charge, reasonable access to, and copies of, all documents, records, and
28 other information relevant to the claimant's claim for benefits." 29 C.F.R. § 2560.503–

1(h)(2)(iii). A "relevant" document, record, or other information includes what was "submitted, considered, or generated in the course of making the benefit determination," regardless of whether it was relied upon in making the benefit determination. 29 C.F.R. § 2560.503–1(m)(8)(ii).

## II. WHETHER MONTOYA IS ENTITLED TO REVIEW THE IME REPORTS PRIOR TO RELIANCE REACHING ITS DECISION ON APPEAL

Montoya argues that ERISA's "full and fair review" requirement, in particular 29 C.F.R. § 2560.503–1(h)(2)(iii), compels Reliance to make the IME reports available to him for review and rebuttal prior to Reliance issuing its final decision on his administrative appeal. Plaintiff's Post Hearing Memorandum ("Memo") (Dkt. No. 31) 4–5. However, the courts that have directly addressed the issue find that subsection (h)(2)(iii) does not require that a plan administrator provide claimants copies of medical reviews as part of the appeal process prior to issuing a final decision on appeal in all cases.

In *Metzger v. UNUM Life Insurance Company of America*, 476 F.3d 1161, 1163 (10th Cir. 2007), the plan administrator refused to provide the plaintiff with peer review medical reports generated during the administrative appeal until after it had reached a final decision on the appeal. The district court held that subsection (h)(2)(iii) "requires a plan administrator to release only documents relied upon during the *initial benefit determination* prior to its final decision on the appeal," (emphasis in original) and that documents generated during the appeal process "need be made available *only after the decision on appeal*" (emphasis added). *Id.* at 1164. The Tenth Circuit upheld the district court's ruling, because:

> [p]ermitting a claimant to receive and rebut medical opinion reports generated in the course of an administrative appeal — even when those reports contain no new factual information and deny benefits on the same basis as the initial decision — would set up an unnecessary cycle of submission, review, re-submission, and re-review. This would undoubtedly prolong the appeal process, which, under the regulations, should normally be completed within 45 days.

*Id.* at 1166.

The Tenth Circuit also relied on the United States Department of Labor's comments on the 2000 amendments to 29 C.F.R. § 2560.503–1, explaining that  disclosure of "relevant documents" served to provide claimants with "adequate access to the information necessary *to determine*

4

*whether to pursue further appeal."* *Metzger*, 476 F.3d at 1167, quoting 65 Fed.Reg. 70,246, at 70,252 (Nov. 21, 2000) (emphasis added). Providing claimants with pre-decision access to relevant documents generated during the administrative appeal "would nullify the Department's explanation" because claimants would not yet know if they were facing an adverse decision. *Metzger*, 476 F.3d at 1167. The court concluded that "[s]o long as appeal-level reports analyze evidence already known to the claimant and contain no new factual information or novel diagnoses," the disclosure of relevant documents generated during the administrative appeal after a final decision on appeal "is consistent with 'full and fair review.'" *Id*.

*Metzger*'s analysis has been adopted by other circuits. In *Glazer v. Reliance Standard Life Insurance Company*, 524 F.3d 1241 (11th Cir. 2008) the Eleventh Circuit held that a full and fair review was provided where the plan did not provide the claimant with the peer review report generated during the appeals stage. *Id.* at 1245–46. The court held that the text of subsections (h)(2)(iii) and (m)(8) would be rendered superfluous if a claimant had a right to documents generated during the review of the appeal, as the "relevant" documents contemplated by ERISA are only those "relied upon" or "submitted, considered, or generated in the course of making the benefit determination." *Id.* at 1245. The court held that a plan administrator does not rely upon or use the report in the course of making a determination until the actual determination has been made. *Id.*[2]

A peer review of medical reports is not the same thing as an IME, but in *Killen v. Reliance Standard Life Insurance Company*, 776 F.3d 303 (5th Cir. 2015), the Fifth Circuit adopted the rationale of *Metzger* and *Glazer* and held that ERISA claimants are not "guaranteed" an opportunity to rebut an IME report generated during an appeal prior to a final decision on the appeal. *Id*. at 310–11. The court explained that because the administrator's underlying justification for denying the plaintiff's benefit claim "remained constant" from the initial denial

---

[2] In *Balmert v. Reliance Standard Life Insurance Company*, 601 F.3d 497 (6th Cir. 2010), the Sixth Circuit described the right of claimants to review IME reports generated on appeal as "dubious" in light of *Metzger* and *Glazer*. *Id.* at 502. The court did not reach the issue itself, instead finding that because plaintiff did not request a copy of the IME or otherwise attempt to rebut it during the administrative appeal, "the fundamental fairness of an otherwise full and fair administrative review process" was not undermined in her case. *Id.* at 502–03.

through the denial at the administrative appeal stage (with reliance on the unproduced IME), plaintiff could not claim that she was "sandbagged" by an IME "report containing unanticipated factual findings." *Id.* at 311.  Therefore, plaintiff's case did not fall into the category where the administrator impermissibly uses a "bait-and-switch" tactic, providing one justification at the first stage and then, during the review, changing the grounds for the denial.  *Id.*  As such, plaintiff was provided a full and fair review.  *See also Pettaway v. Teachers Insurance and Annuity Association of America*, 644 F.3d 427, 436–37 (D.D.C. 2011) (even though new medical reports were generated during the administrative review, "when the review upheld the denial on the same basis as the initial decision" the failure to allow plaintiff to another round of administrative appeals based on the new evidence, "does not violate the requirement that the review be 'full and fair.'").

The only case on point that plaintiff relies on is the Eighth Circuit's opinion in *Abram v. Cargill*, 395 F.3d 882 (8th Cir. 2005).  In *Abram*, the plan did not solicit a peer review report from a medical professional until after the deadline for an appeals decision had passed, and did not provide plaintiff with a copy of the report until after the final denial decision had been issued.  *Id.* at 885–86.  The court held that this type of "gamesmanship" was inconsistent with full and fair review:  "There can hardly be a meaningful dialogue between the claimant and the Plan administrator if evidence is revealed only after a final decision.  A claimant is caught off guard when new information used by the appeals committee emerges only with the final denial."  *Id.* at 886 (citation and quotation marks omitted).  The court concluded that the plaintiff should have been permitted to review and respond to the peer review report.  *Id.*  However, the Eighth Circuit later superseded *Abram* in *Midgett v. Washington Group International Long Term Disability Plan*, 561 F.3d 887 (8th Cir. 2009), based on the revisions and DOL commentary to 21 C.F.R. § 2560.503–1.  The Eighth Circuit explicitly adopted instead the rationale of *Metzger* and *Glazer*. *Id*. at 895-96 (concluding that plaintiff was "not denied a full and fair review of her claim by Aetna's failure to provide her the opportunity to review and rebut the peer reviews" before terminating her administrative appeal).

The Ninth Circuit has not yet addressed this issue, but a few cases offer some guidance. Montoya relies for support on *Abatie v. Alta Health & Life Insurance Company*, 458 F.3d 955 (9th

6

Cir. 2006). The question before the court in *Abatie* was whether the administrator abused its discretion in handling and denying a claim for benefits. The *Abatie* court held that in light of ERISA's requirement for a "full and fair" review of the initial denial on administrative appeal, where an administrator "adds, in its final decision, a new reason for denial, a maneuver that has the effect of insulating the rationale from review, contravenes the purpose of ERISA. This procedural violation must be weighed by the district court in deciding whether Alta abused its discretion" in denying the claim for benefits. *Id*. at 974. It appears that the court was concerned about the type of "sandbagging" discussed in *Metzger* and *Killen*, but in a different context.

Reliance relies on a footnote in *Silver v. Executive Car Leasing Long-Term Disability Plan*, 466 F.3d 727 (9th Cir. 2006). There, the court rejected plaintiff's argument that the district court improperly admitted documents prepared by the administrator in the course of the administrative appeal. *Id*. at 731 n.2. Plaintiff contended that the administrator "unfairly kept the record open for itself after closing the record to him" by including in the administrative record submitted to the district court records created during the appeal. But as the Ninth Circuit recognized, "there is no other way that UNUM could have addressed Silver's appeal except by waiting until he had submitted all of his material. Simply put, in order for UNUM to evaluate Silver's administrative appeal fairly, it had to wait until Silver had submitted all of his materials; for UNUM to do otherwise would either undermine Silver's ability to present all of his supporting information or lead to an interminable back-and-forth between the plan administrator and the claimant." *Id*. The court also noted that "the paperwork generated by UNUM in the course of its review was fully disclosed to Silver during trial at the district court, at which point Silver had ample opportunity to respond." *Id*. Again, while the Ninth Circuit was not addressing the exact question at issue here, it was recognizing some of the concerns discussed by the *Metzger*, *Glazer* and *Midgett* courts about how allowing access to documents prepared by the administrator on appeal could result in an "unnecessary cycle of submission, review, re-submission, and re-review." *Metzger*, 476 F.3d at 1166.

District courts within the Ninth Circuit have followed the *Metzger* line of reasoning. In *Fortlage v. Heller Ehrman LLP*, No. C-08-3406 VRW(EMC), 2009 WL 6391364 (N.D. Cal. Dec.

7

18, 2009) *objections sustained on other grounds*, No. C 08-3406 VRW, 2010 WL 1729462 (N.D. Cal. Apr. 27, 2010), the court carefully reviewed *Metzger* and *Glazer*, and concluded that it was inclined to agree with the law as stated in those cases. *Id*. at * 29-31;[3] *see also Landes v. Intel Corp.'s Long Term Disability Plan*, No. C 08-05382 JW, 2010 WL 3155869, at *2–3 (N.D. Cal. Aug. 9, 2010) (relying on *Glazer* and *Midgett* and concluding that the claimant was not entitled to review and rebut medical review reports before a final decision was reached on appeal, "since the [medical] reports were generated in the course of an administrative appeal rather than the initial benefit denial decision."); *Winz-Byone v. Metropolitan Life Insurance Company, et al.*, No. EDCV 07-238-VAP, 2008 WL 962867, *8 (C.D. Cal. Mar. 26, 2008) *aff'd*, 357 F. App'x 949 (9th Cir. 2009) (agreeing with the Tenth Circuit that requiring a plan to provide the claimant with two medical review reports prior to denying her administrative appeal would create an "endless loop of opinions" and noting that the medical reports did not constitute "new information" or change the basis for the benefits denial).

In sum, the cases that have addressed this issue directly stand for the general proposition that a claimant is not "guaranteed" the right to review IMEs or peer review reports prior to the determination of the administrative appeal. Many of the cases leave open the possibility that if the plan uses an IME (or peer reviews) to create a wholly new reason to deny a claim — in order to bait and switch the claimant — then a violation of ERISA's procedural protections may have occurred. *See, e.g.*, *Killen*, 776 F.3d at 311; *Metzger*, 476 F.3d at 1167. Here, Montoya does not argue that the denial of the psychological component of his claim on administrative appeal (which Reliance issued on July 23, 2014), was based on reasons different from Reliance's initial denial. Similarly, Montoya has not yet completed the medical IME and, therefore, we do not yet know whether Reliance will rely on a newly asserted reason if it denies his claim.

At this stage of the proceedings — where the physical IME has not yet been held and Montoya fails to argue or show that Reliance relied on the psychological IME to insert a new

---

[3] The court also noted that even if it "was not inclined" to agree with *Metzger*, *Glazer* and *Midgett*, it still found no procedural violation because plaintiff had only asked for production of reports before and not after she was notified that medical reviews of her evidence had been performed. *Id*. at *32.

8

reason to deny Montoya's claim — there has been no procedural violation of ERISA. If Reliance uses one or both of the IME reports to insert a new reason for denying Montoya's claim, *and* refuses to provide copies of those IME reports before finally denying Montoya's claim, then Montoya may re-raise his procedural violation argument in conjunction with an appeal of the denial of benefits.

## CONCLUSION

For the reasons described above, plaintiff's motion for partial summary judgment on the issue of review and response to an IME report before a final decision on administrative appeal is DENIED based on the record before the Court

**IT IS SO ORDERED**.

Dated: March 10, 2015

WILLIAM H. ORRICK
United States District Judge