UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARLON MONTOYA,<br><br>Plaintiff,<br><br>v.<br><br>RELIANCE STANDARD LIFE INSURANCE COMPANY, et al.,<br><br>Defendants. | Case No. 14-cv-02740-WHO<br><br>**ORDER ON DISPUTES RE FINAL JUDGMENT**<br><br>Re: Dkt. Nos. 89, 90, 92, 93 |

The parties cannot agree on the terms of the final judgment in this matter because of disputes regarding: (i) the beginning date of the Elimination Period; (ii) the prejudgment interest rate; and (iii) offsets. Dkt. No. 83. This Order resolves them.

**1. Elimination Period**

Under the Policy, benefits were due to start after the Elimination Period, defined as "90 consecutive days of Total Disability." Reliance argues that the Elimination Period began on June 26, 2012, which was the first day plaintiff claimed he was totally disabled, therefore payments should have begun on September 24, 2014. Dkt. No. 89. Montoya argues that under the Policy's somewhat ambiguous provisions, because he returned to work part-time from August 1, 2012 through September 28, 2012, the Elimination Period did not begin until September 28th and ended on December 28, 2012. Both sides agree the date the Elimination Period starts and ends affects the potential offsets and, thus, the amount of benefits owed.

I conclude that Montoya's brief return to part-time work means that Montoya was "residually disabled" under the Plan, where "residual disability" means being "partially disabled" (able to performing his material duties on a part-time basis) and residual disability is considered "Total Disability" and does not break or suspend the Elimination Period. There is no evidence that Montoya was unable to perform his material duties, albeit on a part-time basis for that period

of time. The return to work was temporary and Montoya could not sustain it, further evidencing his own position that he was Totally Disabled as of June 26, 2012.[1] (Which, as pointed out by Reliance, is also consistent with Montoya's collection of California State Disability Insurance Benefits "CASDI" during those months). Therefore, the Elimination Period ended on September 23, 2012 and benefits were due as of September 24, 2012.[2]

### 2. Amount of Benefits Recoverable

Montoya agrees with Reliance that the monthly benefit before offset is $2,602.44. Dkt. No. 90 at 3.[3]

### 3. Offset

Both parties agree that the benefits due to Montoya are offset by the CASDI benefits he received.[4] There is no debate about the amount of the CASDI payments, but instead, about how much of the CASDI benefits should be offset in light of the Elimination Period. Having decided the Elimination Period, from September 24, 2012 through June 2013, plaintiff is entitled to the Policy minimum of $100 per month.

There is also no dispute that from August 1, 2013 through September 24, 2014, plaintiff is entitled to the full monthly benefit of $2,602.44.

The only dispute is for the month of July 2013 – where plaintiff contends the offset is less because the CASDI payments were lower. Reliance does not respond to that argument. In the

---

[1] I am not persuaded by Montoya's argument, relying on the Plan's definition of "Actively at Work." That provision appears to extend benefits to those insured who have gone to a part-time schedule as a matter of course, unrelated to a period of Total Disability similar to what Montoya alleges. *See, e.g.*, AR 7 (defining Active Work, as excluding time off as a result of "injury or sickness").

[2] Construing the Plan as Montoya argues might benefit Montoya, because it would exclude a period of CASDI payments from the offset, but that interpretation is contrary to the benefit of insureds generally because the later the Elimination Period runs, the longer Reliance avoids having to pay benefits.

[3] Montoya agrees to Reliance's estimate, but misstates it in his opening brief as $2,602.33. I will use Reliance's slightly higher amount of $2,602.44. Dkt. No. 89 at 5.

[4] Reliance initially contended an offset for Social Security payments – which Montoya had applied for – should also apply. Since receiving confirmation from the Social Security Administration that Montoya's application was denied on appeal, Reliance has dropped that claimed offset. Dkt. No. 92 at 6.

1  face of Reliance's failure to address it, I adopt Montoya's calculation of what he was owed for
2  July 2013.

### 4. Prejudgment Interest

Reliance argues that the prejudgment interest rate is set by 28 U.S.C. § 1961, and absent substantial evidence supporting a departure from that rate in light of the equities (which Reliance believe has not been shown here), that interest rate should govern. *See Grosz-Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154, 1164 (9th Cir. 2001). Montoya acknowledges that in the Ninth Circuit the presumptive rate is provided in § 1961 and "this Court lacks authority to overrule it." Dkt. No. 90 at 4. Montoya nevertheless points to other Circuits who apply interest rates taken from state law. He also argues that because the rate provided in § 1961 is exceptionally low and because the equities in this case warrant it (*e.g.*, because Reliance had the information it needed, yet refused to pay Montoya's claim earlier), Reliance's conduct justifies a higher rate. Specifically Montoya argues for prejudgment interest at the 10% rate provided by the California Insurance Code § 10111.2. Montoya submits a declaration establishing how during the relevant timeframe he had to incur and pay higher interest rates payments on his student loans and credit cards. Dkt. No. 90-4.

I will not, absent authority from the Ninth Circuit, depart from the presumptive use of § 1961 for an award under ERISA. I also do not find substantial evidence exists that would support an upward departure from that rate based on the equities of this case. I note that this case has taken an abnormally long time to litigate. Those delays were not caused by Montoya personally, but instead by strategic decisions taken by his counsel (*e.g.*, refusing to attend the physical IME without counsel, arguing plaintiff was entitled to review the IME reports before Reliance could make its final administrative determination). I do not find that Reliance's positions were frivolous or without basis, and given the delays that occurred in the litigation in light of the strategic decisions of plaintiff's counsel, it would not be equitable to impose a higher prejudgment rate of interest on Reliance.[5]  However, plaintiff is entitled to prejudgment interest at the rate set under 28

---

[5] *But see Oster v. Standard Ins. Co.*, 768 F. Supp. 2d 1026, 1040 (N.D. Cal. 2011) (awarding a higher rate of interest where insurer treated claimant as an adversary" during the claims process

3

U.S.C. § 1961.

## Conclusion

Now that I have resolved the disputes presented, the parties shall submit an agreed-to form of judgment no later than January 6, 2017.

**IT IS SO ORDERED**.

Dated: December 19, 2016



WILLIAM H. ORRICK
United States District Judge

---

and abandoned its role as his fiduciary, and then withheld payment of benefits for six years).

4